# Watson *v.* The State.

*Indictment for Embezzlement or Fraudulent Conversion by Bailee.*

1. *What bailees are within statute.*—The statute which declares that. "any private banker, commission-merchant, factor, broker, attorney, *bailee,* or *other agent,* who embezzles, or fraudulently converts to his own use," &c., "any money, property or effects, deposited with him, or the proceeds of any property sold by him for another, must be punished as if he had stolen it" (Code, § 4384), applies only to bailments in which the parties stand to each other in a fiduciary relation, the bailee having the possession wholly and exclusively for the benefit of the bailor; and a conviction can not be had under it against the hirer of a domestic animal who sells the same during the term.

FROM the Circuit Court of Russell.

Tried before the Hon. H. D. CLAYTON.

The indictment in this case, as twice copied in the transcript,. charged that the defendant, "Samuel Watson, the bailee of Samuel Reid, did *envagle* (?), or fraudulently convert to his own use, property, to-wit, two oxen, animals of the cow kind, de-; posited with him, the said Samuel Watson, by said Samuel Reid, who was the owner thereof, against the peace," &c. "On the trial," as the bill of exceptions states, "the evidence showed that, on the 4th January, 1881, in said county of Russell, the prosecutor hired a yoke of oxen to the defendant, at $1.50 per week, to. haul wood from Russell county into the town of Girard in said county, and into Columbus, Georgia ; that the defendant did, with the consent of the prosecutor, use said oxen in hauling wood into Girard and Columbus, and from time to time paid for their hire sums amounting to $6.00 ; and that in March, 1881, defendant sold said oxen to W. L. Tillman, who resided in Columbus, Georgia. There was no proof of the place or terms of this sale to Tillman. There was proof tending to show that, in February, 1881, the prosecutor had sold these oxen to the defendant. This was all the evidence in the case, necessary to a proper understanding of the exceptions. The court charged the jury, among other things, that if they believed, from the evidence, that the defendant diverted the oxen from the use for which he had hired them, and removed them out of the State of Alabama, with the intention of placing them beyond the reach of the owner ; that would be a conversion of them, for which he might be convicted in this case,. whether he sold them or not ; and if he afterwards sold them,.

whether in or out of the State, that was a circumstance to which they might look,·in determining his intention in carrying them out of the State." The defendant excepted to this entire ·charge, and to each part of it, and asked the court, in writing, to charge the jury, among other things, as follows: "If the jury believe, from the evidence, that the only proof of the defendant being the bailee of the prosecutor is, that the prosecutor hired the oxen to the defendant, they must acquit the defendant." The court refused to give this charge, and the defendant excepted to its refusal.

GEO. W. HOOPER, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

BRICKELL, C. J.—The indictment is founded on the statute (Code of 1876, § 4384), declaring that "any private banker, commission-merchant, factor, broker, attorney, bailee, or other agent, who embezzles, or fraudulently converts to his own use, or fraudulently secretes, with intent to convert to his own use, any money, property or effects, deposited with him, or the proceeds of any ·property sold by him for another, must be punished, on conviction, as if he had stolen it."

The material question presented is, whether a hirer of live-stock, who, during the term of hiring, sells the same, in or out of the State, is guilty of the offense denounced by the statute. The offense is strictly statutory, and it will be seen, to constitute it, there must be the concurrence of three several facts. 1. The party accused must stand to the owner in the relation of private banker, or commission-merchant, or factor, or broker, ·or attorney, or bailee, or agent. 2. The money, property, or effects, must have been deposited with him, or must be the proceeds of sale, he having authority to sell. 3. The money, property, or effects, or the proceeds of sale, must have been embezzled, or fraudulently converted to the use of the accused, or must have been fraudulently secreted by him, with the intent to convert to his own use.

Bailment is a term of very large signification, and is defined as "a delivery of goods in trust, upon a contract, express or implied, that the trust shall be executed, and the goods returned by the bailee, as soon as the purposes of the bailment shall be answered."—2 Kent, 559. The accuracy of this definition is questioned by Judge STORY, who defines a bailment as "a delivery of a thing in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust."—Story on Bailments, § 2. There are different kinds of bailments, involving different rights and

duties, upon the part of the bailor and bailee. When the general term, *bailment, bailor*, or *bailee*, is employed, whether in a private writing, in a verbal contract, or in a statute, its real meaning can be ascertained only by reference to the subject-matter, and the circumstances attending its employment. The connection in which the term *bailee* is found in the statute under consideration, indicates very clearly that it is not used in its largest sense—that it was not intended to comprehend every species of bailment, and all who might stand to the owner of money, property, or effects, in the relation of a *bailee*. It is limited and confined to bailees of a particular class—those having possession wholly and exclusively for the benefit of the bailor; bailments where the owner parts with the actual possession, not with the right of property, general or special, and is not without right to resume possession.

The hirer of chattels for a term is a bailee, doubtless, but of a particular class or kind. The trust created is not exclusively for the benefit of the bailor, but rather for his own benefit. He acquires the exclusive right to the use and possession of the chattels during the term, and for the term is, in a large sense, the owner. If the chattel perishes, he loses the use, and yet is bound to pay the owner the recompense for the whole term. The right and title of the owner is not a present right and title, but is in reversion. It is not to a bailment of this character the statute refers, but to bailments in which the bailor and bailee stand in a fiduciary relation—in which the bailee acts for or on account of the bailor, and not for himself. Each class of persons mentioned in the statute, other than bailees, are agents, whose duty it is to act for a principal; and if possession is entrusted to them, it is merely for the purpose of effectuating the agency. With them bailees are associated; but the word is restricted, by limiting them to bailees standing in the relation of agents: *bailee or other agent*, are the words of the statute—the equivalent of bailee standing in the relation of agent.

We do not deem it necessary to consider any other question involved, as we are of the opinion, that the appellant, being the hirer of the oxen, having the property in them, and the right of exclusive possession for the term, is not a bailee of the class to which the statute refers. In this view, the rulings of the Circuit Court are erroneous, and the judgment must be reversed, and a judgment here rendered discharging the appellant from further prosecution.