[No. 3190.]

LEE REED *v.* THE STATE.

1. EMBEZZLEMENT—JURISDICTION.—A prosecution for embezzlement may be maintained in the county in which the accused took or received the property embezzled, or through or into which he may have undertaken to transport it.

2. SAME—STATUTE CONSTRUED.—The statute defining embezzlement (Penal Code, Article 876) includes only such bailments where the bailee had possession of the personal property for the benefit of the bailor, and not where its possession is held for the benefit of the bailee, such as for hire. See the opinion *in extenso* on the question.

3. SAME—JURISDICTION.—To sustain a conviction for embezzlement in a county other than that in which the property was received, it must be shown that when the accused received the property in the latter county he undertook to transport it into the county where the conviction was had.

APPEAL from the District Court of Milam. Tried below before the Hon. W. E. Collard.

The conviction was for the embezzlement of a horse, the property of one Gustave Gross. The penalty awarded the appellant was a term of five years in the penitentiary.

Gustave Gross was the first witness for the State. He pronounced his name with a gutteral sound, between Gross and Gruss. On or about the first day of March, 1883, he was the proprietor of a livery stable in the town of Taylor, Williamson county, Texas. On that day the defendant, representing that he wanted to ride some miles into the country, came to the witness to hire a horse. The witness hired him a sorrel horse worth seventy-five dollars, at a stipulated price of one dollar and a half a day.

He was to be gone until the next morning, and offered to pay the hire in advance. Witness told him that he could pay on his return. The defendant said that he was going into the country to see his sister. The defendant did not return next morning with the horse, as he promised, and it was a week before the witness recovered the horse at a livery stable in Rockdale, Texas, twenty-eight miles distant from Taylor. Witness did not consent to the defendant riding his horse to Rockdale, nor to his selling or in any way disposing of his horse.

Theodore Hewitt was the next witness for the State. He testified that he and one John Stevens purchased a sorrel horse from the defendant in the town of Rockdale, on or about the first of March, 1883. The price at which the purchase of the animal was made was fifty dollars. Of this they paid the defendant twenty dollars, and were to pay him the remaining thirty when they became satisfied that defendant's title to the horse was good. The low price at which the horse was offered, he being well worth seventy-five dollars, excited the suspicion of the witness as to the validity of defendant's title. The defendant said that his name was Lee Reed; that he lived at Bryan; that he had come from Bell county, and could prove his title to the horse in Belton. Witness went with defendant to Milano, eight miles below Rockdale, to see if defendant could prove title to this horse at that place. Defendant at Milano promised to return for the thirty dollars balance on the horse in two or three days, but failed to appear. The owner, one Gross, came and claimed the horse on the next Thursday or Friday. On Saturday the defendant was brought to Rockdale under arrest. He then repaid the witness and Stevens the twenty dollars, and the horse was delivered to Gross. The defendant had relatives named Reed in Bell county.

The defendant came to Rockdale one evening about the middle of the week, but witness did not see him until next morning. The defendant was then with John Stevens. Witness did not know whether Stevens on the night before won any money from defendant. Stevens was a gambler. The witness was not. Witness did not know the defendant owed Stevens anything. The money was paid to defendant in cash. The horse was not pledged to, but was bought by the witness and Stevens from the defendant. Stevens is dead.

A. J. Worley was the next witness for the State. He testified that he first saw the defendant about twenty-five miles west or

southwest of Cameron, on or about the first of March, 1883. This was on Tuesday morning, at the house of one Berry. Defendant wanted to sell the witness a sorrel horse, for which he asked fifty dollars. The fact that the horse was well worth more excited the suspicions of the witness as to the defendant's title. Defendant said that by telegraphing to Belton, he could identify himself as the owner of the horse. Witness and defendant went to Rockdale together, but witness did not buy the horse. The witness next saw the horse in the possession of Gross, the alleged owner, about four miles from Thorndale, a town in Milam county, on the International railroad.

A. J. Lewis was the next witness for the State. He testified that he knew the parties named Reed, who were related to the defendant. They lived in Bell county, four or five miles from the town of Rogers. Rogers is a town in Milam county, on the Gulf, Colorado and Santa Fe railroad, about twenty-five miles from Taylor, in Williamson county, and about the same distance from Rockdale, in Milam county. A man could ride to Reed's house from Taylor in an evening. Cameron was distant from Rogers eighteen miles.

Mrs. G. A. C. Reed, the mother of the defendant, testified, in his behalf, that the defendant was in the seventeenth year of his age. Witness lived in Bryan, Brazos county. On the first of March, 1883, the defendant was on a visit to his two uncles Reed, who reside near Rogers, in Bell county. He returned home on Thursday or Friday, and on the next day he started back, saying that he was going to Rockdale to redeem a horse he had pledged for twenty dollars. The witness gave him twenty dollars for this purpose. He left home, near Bryan, for the purpose of taking the train to Rockdale to redeem the horse.

Cross-examined, witness stated that defendant did not have a sister in Bell county; nor did he have a sister living in Williamson county. The defendant was arrested just as he was about to board the train to Rockdale, and was taken on to Rockdale. Defendant has relatives in Cameron.

The motion for new trial raised the questions discussed in the opinion, and attacked the sufficiency and competency of the evidence, and the correctness of the charge of the court.

*John N. Henderson,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Two counts, one for theft and one for embezzlement, were contained in the indictment. After the evidence for the State was in, the district attorney elected the count upon embezzlement as the one upon which alone he claimed a conviction. This count for embezzlement alleged that defendant, as agent and bailee of one Gustave Gross, received into his custody the horse, and, as such agent, did fraudulently misapply and convert the said horse to his own use. In this second count these acts of defendant are alleged to have been done and committed in Milam county. The evidence shows that defendant hired the horse and came into possession of him in Williamson county. Did the district court of Milam county have jurisdiction of the offense? If defendant was guilty of embezzlement, then under the statute he could be prosecuted in any county in which "he may have taken or received the property, or through or into which he may have undertaken to transport it." (Code Crim. Proc., Art. 219; Cole v. State, decided at the present term.)

Two points are urgently insisted upon as fatal to the validity of a conviction in this case for embezzlement:

1. That our statute does not include as embezzlement a bailment which occurs from and is constituted by a hiring.

2. That if the hiring of a horse constituted a bailment such as is contemplated in the statute, then, to give the district court of Milam county jurisdiction of the offense, it must appear that at the time of the hiring in Williamson county it was understood that the horse was to be taken by the bailee into Milam county; that is, defendant must have undertaken to transport it into Milam county.

Article 876, Penal Code, in defining and punishing the crime of embezzlement, mentions amongst those subject to the provisions therein contained, any officer, agent, etc., consignee or bailee of money or property, etc.

Whether a fraudulent conversion by a bailee for hire was embezzlement came up for decision before the Supreme Court of Alabama upon a statute very similar to ours, and the court say: "Bailment is a term of very large signification, and is defined as a delivery of goods in trust upon a contract, expressed or implied, that the trust shall be executed and the goods returned by the bailee as soon as the purpose of the bailment shall be answered. (2 Kent, 559.) The accuracy of this definition is questioned by Judge Story, who defines a bailment as a delivery of a thing in trust for some special object or purpose, and upon

a contract, express or implied, to conform to the object or purpose of the trust. (Story on Bail., sec. 2.) There are different kinds of bailments, involving different rights and duties on the part of the bailor or bailee. When the general term *bailment, bailor or bailee* is employed, whether in a private writing, in a verbal contract, or in a statute, its real meaning can be ascertained only by reference to the subject matter and the circumstances attending its employment.

"The connection in which the term *bailee* is found in the statute under consideration indicates very clearly that it is not used in its largest sense—that it was not intended to comprehend every species of bailment, and all who might stand to the owner of money, property or effects in the relation of a *bailee.* It is limited and confined to bailees of a particular class, those having possession wholly and exclusively for the benefit of the bailor—bailments where the owner parts with the actual possession, not with the right of property general or special, and is not without right to resume possession. The hirer of chattels for a term is a bailee, doubtless, but of a particular class or kind. The trust created is not exclusively for the benefit of the bailor, but rather for his own benefit. * * * * It is not a bailment of this character the statute refers to, but to bailments in which the bailor and bailee stand in a fiduciary relation, in which the bailee acts for and on account of the bailor, and not for himself." (*Watson* v. *The State,* 70 Ala., 13.) In Watson's case, the facts of which are in every respect similar to the case before us, the court further held that the word "bailee" in the statute was a bailee standing in the relation of agent. And, this, we think, is a proper construction of the word used in our statute. The property embezzled must have come into possession or care of the party charged, by virtue of such office, agency or employment. (See 43 Texas, 455; 4 Texas Ct. of App., 406; 21 Texas, 775; 5 Denio, N. Y., 79.)

It would only be by virtue of such construction that jurisdictional venue of the offense could be entertained in any county other than the one in which the property was received, because his liability in such other county would only arise from an undertaking on his part to transport the property into it, and such undertaking would not likely arise under a relationship other than that of principal and agent.

On the facts as exhibited in this record, we do not think the statutory offense of embezzlement can be predicated, a bailee

for hire of personal property not being such a bailee as the statute contemplates.

But, even if embezzlement could have been predicated upon the relation existing between the parties, still the jurisdiction of the district court of Milam county could not attach in the case, unless it had been shown that defendant undertook to transport the horse into Milam county when he received it in Williamson county. This was not done. If any offense is shown by the record, it is theft of the horse, and, had the conviction been on the first count in the indictment, which was dismissed, we see no reason why such conviction could not have been sustained upon ample authority. (Bish. on Stat. Crimes, sec. 419; *Maddox* v. *The State,* 41 Texas, 205; *Quitzow* v. *The State,* 1 Texas Ct. App., 65; *State* v. *Coombs,* 55 Me., 477; 70 Ala., 13.)

Because the conviction for embezzlement is not warranted either by the law or the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered June 25, 1884.