[No. 1742.]

## W. H. Morrison *v.* The State.

1. Practice — Theft. — It is the settled law of this State that, under an ordinary indictment for theft, a conviction can be had on proof that the taking, though with the owner's consent, was obtained by false pretext, or with intent to deprive the owner of the value of the property and appropriate it to the use and benefit of the taker.

2. Same. — To constitute theft under the statute of this State, the taking must be wrongful, so that if the property came into the possession of the person accused, by lawful means, the subsequent appropriation of it is not theft; but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete. In the latter event the false pretext whereunder the possession was obtained, and the intent, must be established by competent proof.

3. Same — Intent. — The felonious intent is the very gist of the offense, and is essential to the crime of theft in all its phases, and this intent must exist at the very time of the taking; no subsequent felonious intent will render the

previous taking felonious. Note the opinion for a full exposition of the rule that, in order to constitute horse theft where the original possession of the animal was lawfully acquired, it must be established beyond reasonable doubt that the fraudulent intent existed at the very time that the property was acquired. See the opinion *in extenso* for an elaboration of the entire question.

4. NEW TRIAL — EVIDENCE.— See the opinion and the statement of the case for evidence demanding the award of a new trial.

APPEAL from the District Court of Johnson. Tried below before the Hon. Jo. Abbott.

The indictment in this case charged the appellant with the theft of a horse, the property of E. H. Blackwell, in Johnson county, Texas, on the 16th day of June, 1883. His trial resulted in his conviction, and his penalty was affixed at a term of five years in the penitentiary.

E. H. Blackwell was the first witness for the State. He testified that between 8 and 9 o'clock on the morning of Sunday, June 17, 1883, the defendant came to his livery stable, in Cleburne, Johnson county, to hire a horse, for the purpose, he said, of going to Glenrose, Somervell county, to see Dud Hudson. He hired the horse of the witness, and was to return him on the night of Monday — the following day. He got the horse and told the witness that he was going to start as soon as he went to the postoffice, towards which point he went immediately. The witness saw no more of the defendant, until in January, 1884, when he returned to Cleburne and surrendered.

Some days after the horse was delivered to the defendant in the manner described, the witness heard that the animal was in Fort Worth, to which point the witness repaired, and recovered the animal from a man named Souther. The witness made an affidavit charging the defendant with the theft of the horse, about two days after the defendant left with the animal. Upon this affidavit he obtained a warrant for the defendant, and took it with him to Fort Worth. Failing to find the defendant in Fort Worth, he left the warrant with the sheriff of Tarrant county. The horse was the property of the witness and was hired to the defendant in Johnson county. The witness did not give the defendant consent to sell or otherwise dispose of the said horse.

The witness Souther testified, for the State, that he purchased the horse in question, of the defendant, in Fort Worth, Texas, on the afternoon of Monday, June 18, 1883. The defendant, at the time of that purchase, assured the witness that the horse was his prop-

erty, that he had raised the said animal, and that the said animal was five years old. The witness paid the defendant $35 for the said horse. A few days after this purchase, the witness Blackwell came to Fort Worth, claimed and recovered the animal. Thereupon the witness went to Bill Hudson's cattle herd in Clay county, Texas, in search of the defendant, but failed to find him. The purchase money of the horse has been returned to the witness since his surrender of the horse to Blackwell, but the witness has never been reimbursed his expenses. At this point the State closed.

The substance of the testimony of Mrs. W. M. Morrison is embodied in the opinion of the court. Mrs. Morrison was corroborated by Miss Berrier, a sister-in-law of the defendant.

Deputy Sheriff John D. Mitchell testified, for the defense, that sometime in January, 1884, the defendant, at that time in Cleburne, summoned the witness by messenger, and told him, witness, that he, defendant, had come in to surrender. The witness went with the defendant to the court house, where they found that no indictment had been presented against the defendant. Thence they went to the witness Blackwell, who informed them that he had filed an affidavit against the defendant in the justice's court. Accordingly they went to the justice's court, where a warrant was secured. The defendant gave bond and was released. The witness had no information as to the whereabouts of the defendant prior to his surrender.

The opinion discloses the grounds relied upon in the motion for new trial.

*Brown, Ramsay & Crane*, for the appellant, filed an able and exhaustive brief on the original hearing, and a like written argument in support of the motion for rehearing.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. Appellant was tried and convicted in the lower court on an indictment charging him in the ordinary form with the theft of a horse, the property of one E. H. Blackwell. At the last Austin term his appeal from the judgment of conviction was affirmed by this court in an oral opinion. A motion for rehearing was submitted by appellant's counsel, accompanied by a most able argument upon the law and the facts.

The two prominent points relied upon for a rehearing and reversal of the judgment are:

1. That the lower court erred in overruling in the first instance his application for a continuance, and again in not granting him a

new trial, when his application for continuance was considered in connection with the other evidence in the case.

2. That the evidence upon which the conviction rests, as shown by the record, is insufficient to sustain the judgment; that the verdict and judgment are contrary to the evidence and the law of the case, and therefore the lower court erred in overruling his motion for a new trial based upon these grounds.

As stated above, the indictment was an ordinary indictment for, and simply alleging, the theft of the horse. The evidence in behalf of the State showed a hire of the horse by defendant from the owner, and a subsequent sale of the horse by the defendant without the knowledge and consent of the owner; and the theory upon which the conviction rests is that the possession of the horse was originally acquired by defendant with false pretenses, and with a fraudulent intent to steal at the time he hired him. "It is well settled in this State that, under an ordinary indictment for theft, a conviction may be had on proof which shows that the taking, though with the owner's consent, was obtained by false pretext or with intent to deprive the owner of the value of the property and appropriate it to the use and benefit of the taker." (*Dow* v. *The State*, 12 Texas Ct. App., 343, and authorities there cited. See, also, *The State* v. *Coombs*, 65 Me., 477; *Watson* v. *The State*, 70 Ala., 13.)

But it is also equally as well settled that, in order to sustain a prosecution for theft where the taking was originally lawful, the proof must show that the taking was obtained by means of some false pretext or with intent to deprive the owner of the value of the property and appropriate it to the use and benefit of the taker. (*Hornbeck* v. *The State*, 10 Texas Ct. App., 408; *Dow* v. *The State*, *supra*.) Our statute is that, to constitute theft, the taking must be wrongful, so that, if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft; but if the taking, though originally lawful, was obtained by any false pretext or with any intent to deprive the owner of the value thereof and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete." (Penal Code, art. 727.) But the felonious *intent* is the very gist of the offense, and is essential to the crime of theft in all its phases, and this intent must exist at the very time of the taking; no subsequent felonious intent will render the previous taking felonious. (*Billiard* v. *The State*, 30 Texas, 368; *Quitzow* v. *The State*, 1 Texas Ct. App., 65; *Johnson* v. *The State*, Id., 118; *Dow* v. *The State*, 12 Texas Ct. App., 343.)

" It may at one time have been considered the law of larceny, that, although a hiring and taking in the first place might have been *bona fide*, yet, if the time for which the hiring was made had expired, and the property is afterward converted, it is larceny. But such has not for a long time been the law, which is now stated correctly as follows: Where the horse was delivered on hire or loan, and such delivery was obtained *bona fide*, no subsequent wrongful conversion pending the contract would amount to a felony. (2 Russ. on Crimes, 9th ed., 237.) Where the possession was obtained *bona fide*, the mere fact of the subsequent existence of the *animus furandi* does not make the offense larceny. (2 Whart. Cr. Law, § 1860.) If one hires a horse and sells it before a journey is performed, *or sells it after before it is returned*, he commits no larceny in a case where the felonious intent came upon him subsequently to his receiving it into his possession." (2 Bish. Cr. L., § 864; *Hill* v. *The State*, Supreme Court of Wisconsin (1883), 4 Crim. L. Magazine, 340.)

In *Rex* v. *Banks*, Russell & Ryan C. C., 441, it was held that "if A. *bona fide* hire a horse for a particular purpose, and after that purpose is accomplished sell the horse, it is no larceny; for, unless he had an original felonious intention, the subsequent withholding or disposing of the horse *does not constitute a new felonious taking.*" This subject is most ably and elaborately discussed in many of the leading authorities cited in the editor's note to *Commonwealth* v. *James* (1 Pick., 375), which case is reported in full in 2 Leading Crim. Cases (Bennett & Head), 2d ed., p. 181 *et seq.* It must be carefully observed, however, that the rule we have been considering applies only where, in the first instance, the goods were obtained *rightfully*, as well as without the *animo furandi*. Everything depends upon the intent, or existence or non-existence of the *animus furandi* at the time of the original taking. Where one has come into possession of personal property by consent of the owner, to warrant his conviction for the theft of the same, this fraudulent intent or *animus furandi* at the time of its acquisition should be established clearly and beyond a reasonable doubt.

Let us now apply these established rules of law to the facts in this case. Briefly stated, the facts material to the issue are, that about 8 or 9 o'clock on a Sunday morning in June, 1883, defendant hired of Blackwell, in Cleburne, at his livery stable, a horse for two days, saying he wanted to ride the horse to Glenrose in Somervell county, to see one Dud Hudson at Glenrose. On Monday, the 18th of June, 1883, the day after defendant hired the horse, he sold

him in the city of Fort Worth, twenty-eight miles from Cleburne, in the afternoon of said day, to one Souther. Blackwell recovered the horse from Souther at Fort Worth. Defendant proved by his wife that, at about 8 o'clock of the Sunday morning on which defendant hired the horse, he left home on the horse in the direction of Glenrose, Somervell county, where he had previously told her he was going to see Dud Hudson, and where she understood Hudson lived, to find out where one W. T. Hudson was. That, about 10 o'clock at night of the same day, he returned home to Cleburne and told her he had been to Glenrose to see Hudson. On the next or Monday morning, he again left home, saying he was going to Fort Worth to see W. T. Hudson, and that he would come back home that night. He carried no clothing with him except what he wore. Another witness substantially corroborated the testimony of the wife. In January following, defendant returned to Cleburne and surrendered himself to the officers of the law.

The charge of the court was a full, fair and careful exposition of the law of the case.

We have reproduced the facts with a view of determining whether the action of the court in overruling defendant's motion for a new trial was correct, in consideration of the facts taken in connection with the facts proposed to be proved by the absent witnesses for whom the continuance which had been overruled was sought.

Now we have seen that the issue was as to what was his intent at the time of the hiring of the horse by him. If his intent was really and only to go to Glenrose to see Dud Hudson, to find out from him where W. T. Hudson was, then his subsequent sale of the horse at Fort Worth, however wrongful, was not theft. If the testimony of his witnesses is to be believed, then he did go to Glenrose to see Dud Hudson, and returned to Cleburne, and afterwards went to Fort Worth to see W. T. Hudson, the man he wanted to find. If we give him the presumption of innocence, which the law accords to every accused party, we should presume, if this evidence be true, and if in fact he did go to Glenrose, that the intent with which he hired the horse to go to Glenrose was the innocent one stated by him, and that the *animus furandi* never took possession of him until after his return from Glenrose. It becomes a very important matter, then, to find out whether or not it be true that he did in fact go to Glenrose. This fact his wife and the other witness did not know, for they were not at Glenrose.

Now the object sought to be proven by the absent witness, A. J. or Dud Hudson, was that defendant went to Glenrose, saw the

witness, inquired of him for the whereabouts of W. T. Hudson, the party he was seeking. That Dud Hudson did not know where W. T. Hudson was, and that said witness saw defendant, immediately thereafter, go back in the direction of Cleburne. In an explanation of the ruling, the court says his action was based, both as to the application for continuance and the motion for a new trial, upon the fact that the evidence was not thought to be material. We think otherwise. In our opinion, the evidence was material, and should have been before the jury to have been weighed and considered by them in determining the vital issue in the case, viz.: whether the defendant obtained the possession of the horse with fraudulent intent and by means of a false pretext.

Because the court erred in overruling defendant's motion for a new trial, the judgment should be reversed. Wherefore the appellant's motion for rehearing is granted; the judgment of affirmance heretofore rendered is set aside, and the judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

[Opinion delivered October 15, 1884.]