GENE NORTHCUTT v. THE STATE.

No. 787.  Decided November 9, 1910.

**Theft—Bailee—Landlord and Tenant—Insufficiency of the Evidence.**

Where, upon trial for theft as bailee, the evidence showed that the defendant had possession of the landlord's interest in certain cotton by virtue of his tenancy, and that he sold the cotton and appropriated the proceeds instead of placing them in the bank as he was directed to do, this was not theft under bailment and the conviction could not be sustained.  Distinguishing Livingston v. State, 38 Texas Crim. Rep., 535.

Appeal from the County Court of Taylor.  Tried below before the Hon. T. A. Bledsoe.

Appeal from a conviction of theft as bailee; penalty, a fine of $50 and one day confinement in the county jail.

The opinion states the case.

*Dallas Scarborough,* for appellant.—Filed an able brief, which was partly adopted in the opinion of the court; and cited cases in the opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was charged in the County Court of Taylor County with the crime of theft as bailee. The charging part of the information is as follows: "That Gene Northcutt on or about the 4th day of November, A. D. 1909, and prior to the filing of this information in the county of Taylor, and in the State of Texas, having possession of certain money, then and there the corporeal personal property of M. W. Shelly, Sr., viz.: twenty dollars and ninety-nine cents in lawful money of the United States of the value of twenty dollars and ninety-nine cents, the said Gene Northcutt having possession of said property by virtue of bailment, did then and there unlawfully and without the consent of M. W. Shelly, Sr., the owner thereof, fraudulently convert said money to his, the said Gene Northcutt's, own use and with the intent to deprive the said M. W. Shelly, Sr., the owner of the value of the same." The facts show that appellant was, for the year 1909, a tenant on the farm of Mr. M. W. Shelly, Sr., situated about four miles southeast of Abilene; that under the contract of renting appellant was to pick cotton, have same ginned and was to sell the cotton raised on the premises, collect the money therefor and deposit one-fourth of same to the credit of Mr. Shelly in the Farmers and Merchants National Bank at Abilene. It appears that during the year 1909 appellant planted and raised a cotton crop on the premises; that the rent of the first bale of cotton gathered and sold by him was placed to Mr. Shelly's credit in said bank in accordance with the contract. It is also shown that appellant neither planted nor raised any other cotton except that on Shelly's farm. It further appears that in November of last year appellant brought a bale of cotton raised on the rented premises, to Abilene and sold it, but did not deposit the rent, or any portion thereof in the bank to Shelly's credit; that a short time after this sale Mr. Shelly approached appellant and asked him if he had deposited the money according to contract; that appellant replied that he had not done so, and being further interrogated as to why he had not deposited the money in pursuance of the agreement, he stated that he needed the money and had used it. Immediately demand for the payment of the rent was made, which was not acceded to, and it may be stated that it has never since been paid. It appears further that in some conversation appellant told Mr. Shelly that there was enough cotton in the field yet to be picked to pay the rent, but it seems that while appellant gathered the remaining cotton in

the field, he never paid any further rent. Mr. Shelly testifies that he never consented that appellant should appropriate this money, or use the same himself; that he was to have possession of the rent money cotton for the purpose of sale and placing the proceeds in the bank; that the cotton was never divided, but kept together. He further says: "The only possession I had was by virtue of being the owner of the farm and being the landlord." Without going into the facts in detail it is made clear that this second bale of cotton was sold by appellant and that he received payment for same, and that he had not paid the rent due appellant.

A number of questions were raised, both by special charge and in the motion for new trial. It seems clear to us that if a prosecution can be maintained at all on these facts, about which we have grave doubt, that it is certain that the conviction can not be sustained on the ground charged in the information. The relation of appellant to Mr. Shelly was more that of a debtor than that his possession of the cotton was that of bailee in the legal sense. Our Penal Code does not define the term bailment further than as a contract of borrowing or hire. We must, therefore, recur to the well known legal meaning of the term bailment. This question has not infrequently been before this court and the term bailment has received construction by us heretofore. In the case of Mlaz v. State, 36 Texas Crim. Rep., 447, 37 · S. W. Rep., 748, Judge Henderson, speaking for the court, uses this language: "In other words, the contention is that the word 'bailment' should be specifically defined; that is, that all characters of bailment should be specified. While it is true there are a number of different sorts of bailments, which are ordinarily classed into deposits, mandates, gratuitous loans, bailments for hire, and pledges or pawns, still each of said kinds of bailments is of the same general character, and is defined 'to be a delivery of personal property to another, for some purpose, upon a· contract, express or implied, that such purpose shall be carried out.' See Fulcher v. State, 32 Texas Crim. Rep., 621, 25 S. W. Rep., 625, citing 2 Bl. Comm., p. 451; Jones Bailm., 117; and Story Bailm., sec. 2.

"In 2 Am. & Eng. Enc. of Law, p. 40, 'bailment' is defined as follows: 'A transfer of the possession of personal property from one person to another, without a transfer of the ownership of it.' These are standard definitions of the term, and are well understood, and there can be no difficulty about the meaning of the term 'bailment.'"

The following portion of the brief of appellant's counsel contains such a clear and thorough analysis of the question and statement of the law that it is adopted as part of the opinion of the court: "The American and English Encyclopedia of Law, vol. 3, page 733, defines bailment to be: 'a delivery of goods for some purpose upon a contract, express or implied; that after the purpose has been fulfilled, they shall be redelivered to the bailor, or afterwards dealt with ac-

cording to his directions or keeping until he reclaims them.' In other words, there must be a delivery of the specific article to the defendant for a specific purpose where the title to the property does not change from the bailor and in order to be guilty of theft by bailee the property converted must be the property acquired by the contract of bailment. It can not be a disposition of property and money acquired for defendant and a conversion of the money. As an illustration: A goes to a livery stable and hires a horse and buggy ostensibly for the purpose of taking an afternoon drive, but drives the horse and buggy away and converts the same to his own use and benefit. This would be theft by bailee. But A goes to a livery stable and the owner instructs A to take the horse and buggy to market and sell it. A takes the horse and buggy to the market and sells it and puts the money in his pocket; converts the money to his own use and benefit. This would be embezzlement, and not theft by bailee. Why? Because the specific article delivered to the defendant was not a contract of bailment in that that specific article was not to be returned, but was to be sold, and when the contract was complied with for the specific purpose that it was given to the defendant, he has not breached that contract, but the further contract that he should then return the proceeds to the owner of the horse and buggy having been breached, it becomes a different offense, and not an offense growing out of the conversion of the specific article because the specific article bailed, if there was a bailment, was not converted. A 'bailment' is defined in Words and Phrases to be 'a delivery of goods in trust on a contract, express or implied; that the trust shall be truly executed and the goods restored to the bailor as soon as the purpose of the bailment shall be answered.' Watson v. State, 70 Ala., 13. Again, bailment is defined to be 'the delivery of goods for some purpose under a contract, express or implied; that after the purpose has been fulfilled they shall be redelivered to the bailor or otherwise dealt with according to his term of keeping until he claims them.' McCaffrey v. Knapp, 74 Ill., appealed cases, 80. Again, bailment is defined to be: 'A delivery of a thing in trust for some special object or purpose on a contract, express or implied, to conform to the object or the purpose of the trust.' Krause v. Commonwealth, 39 American Reports, 762; Goodwyn v. State, 64 S. W., 251. Under the contract, under the facts in this case, the defendant was the tenant, had the lawful possession of the property and the landlord says that he was to sell all the cotton intact and place one-fourth of the money derived therefrom in the bank. The most that can be said of this case is that the defendant had possession of the landlord's interest in the cotton by virtue of being tenant, and that he sold the cotton and put the money in his pocket instead of putting it in the bank, as he was directed to do, but in order for the defendant to be guilty of theft by bailee, the facts must show that the very specific thing alleged to have been converted must have

been delivered to the defendant by the bailor on a specific contract. . . . Again, bailment is defined to be 'a delivery of a thing under which the bailee acquires an independent and temporary exclusive possession for a specific purpose.' Atlantic Coast Line Railroad Co. v. Baker, 45 S. E., 673. Under all of the definitions given by all the books, the delivery of a particular thing out of the possession of the bailor to the bailee, upon a contract to return that article or to make some definite disposition of that article, is the foundation and the fundamental object of the law of bailment. If $20.99 that was received for the cotton that the defendant sold had been stolen at any time after it was acquired, under the law of this State in a prosecution for theft, could the ownership of that $20.99 have been alleged to have been in the prosecuting witness Shelly? Certainly not. The party who is the actual custodian of the property is the party in possession. See Ledbetter v. State, 35 Texas Crim. Rep., 195, 29 S. W. Rep., 1084; Bailey v. State, 20 Texas Crim. App., 68; Briggs v. State, 20 Texas Crim. App., 106; Littleton v. State, 20 Texas Crim. App., 168; Bailey v. State, 18 Texas Crim. App., 426; Frazier v. State, 18 Texas Crim. App., 434; Case v. State, 12 Texas Crim. App., 228, 3 S. W. Rep., 338; Ex parte Rucker, 6 Texas Crim. App., 81; Tinney v. State, 24 Texas Crim. App., 112, and Alexander v. State, 24 Texas Crim. App., 126."

This case seems wholly unlike the case of Livingston v. State, 38 Texas Crim. Rep., 535, cited by our Assistant Attorney-General. In that case it was held that a servant or employe who is in temporary custody or control of the property of his employer does not have such possession as in any sense, to constitute him, the owner or possessor as against the ownership or possession of his employer, or master, and that the ownership and possession remains in the employer or master, and that a fraudulent taking of the property by such employe or servant without the consent of the master or employer is theft, and that in such case the indictment charging theft by bailee could not be maintained. It would seem clear that if theft as bailee could not be maintained in that case that it must fail in the case at bar. We think, therefore, without discussing the other questions in the case that it must result that on the charge here preferred the conviction ought not to and can not stand.

The case is, therefore, reversed and remanded.

*Reversed and remanded.*