## V. M. CLARK v. THE STATE.

### No. 1037. - Decided March 15, 1911.

**1.—Embezzlement—Principal and Agent—Loan—Insufficiency of the Evidence.**

Where, upon trial of embezzlement, the evidence showed that defendant's relation to the prosecutrix in the financial transaction between them was not that of a trustee or agent, but that defendant was simply a borrower and she a lender of the amount of money alleged to have been embezzled, a conviction for embezzlement could not be sustained.

**2.—Same—Fraudulent Intent—Loan—Rule Stated.**

The rule is that even where a party obtains money by a loan though he may have had the fraudulent intent not to repay, that such transaction would not constitute embezzlement.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of embezzlement; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*C. E. Sheppard* and *Will A. Morriss* and *Jno. R. Storms,* for appellant.—On the question of the insufficiency of evidence: Northcutt v.

State, 131 S. W. Rep., 1128; Manuel v. State, 44 Texas Crim. Rep., 433, 71 S. W. Rep., 973; Dancy v. State, 41 Texas Crim. Rep., 293, 53 S. W. Rep., 886; Reed v. State, 16 Texas Crim. App., 586; Griffin v. State, 4 Texas Crim. App., 390; McCrary v. State, 51 Texas Crim. Rep., 496, 103 S. W. Rep., 926.

*C. E. Lane*, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted under the fourth count of the indictment of embezzlement. The indictment al- leges that on the 2d of May, 1908, appellant was in possession of $1,500 in money furnished him by Mrs. Marion Pillsbury, which was to be used exclusively in payment of material and labor on improve- ments of property situated in San Antonio, Bexar County, Texas, at 419 Dallas street; that appellant was to act as agent and attorney of said Marion Pillsbury in purchasing materials necessary and in pro- curing labor necessary to do said work, and by reason of being the agent and attorney of said Pillsbury appellant came into possession of the said $1,500, and that he did not use said money as aforesaid for material and labor, but did fraudulently embezzle, misapply and con- vert to his own use, without the consent of Marion Pillsbury, five hun- dred dollars of said money. This is the substance of the count upon which the conviction was predicated.

The contract between Mrs. Pillsbury and appellant is to the effect that she had agreed to furnish appellant $1,500 for the purpose of making improvements on property owned by appellant on No. 417 and 419 Dallas street in the city of San Antonio, which improvements looked to the completion of a house situated on said premises, and that said $1,500 was "to be paid exclusively for labor and material going in the construction of said house." The contract further states that in consideration of the premises that the agreement on the part of ap- pellant was to pay Mrs. Pillsbury the sum of $1,500 on the first of May, 1909, together with interest on said amount at the rate of nine percent per annum from date, the interest to be paid monthly in ad- vance. It was also agreed that Mrs. Pillsbury should stay in the house with her child until May 1, 1909, and live with appellant and his wife as a part of the family; that she was to assist in taking care of the house, and in performing the household duties with Mrs. Clark such as might arise during that year, reserving to herself the option of going and coming at her pleasure, and to stay as long as it would suit her pleasure and convenience. The purpose of the contract was to meet the requirements of the statute providing for a lien upon the homestead for improvements, and for labor and material necessary for such improvements, and it was expressly agreed and understood that the purpose of this contract was to create a mechanic's lien upon the house and lot in favor of Mrs. Pillsbury. It was further stipulated that she authorized and empowered appellant to purchase the neces-

sary material and to procure and pay for necessary labor not to exceed the sum of $1,500 for the purpose of the completion of said house. And it was further agreed that the said sum of $1,500, receipt of which is acknowledged by this instrument, shall be deposited in the bank, etc. It is further mentioned in the contract that this indebtedness is evidenced by the promissory note of appellant and his wife of even date with this instrument; and it is further stipulated that in purchasing the material and securing the labor necessary to complete the house appellant was to act as the agent and attorney of Mrs. Pillsbury, inasmuch as the contract is intended to protect her for the advancement of said sum for the purposes stated. There was a note executed at the same time by appellant and his wife, Mrs. Cora M. Clark, for $1,500 with interest at nine percent per annum from date, stipulating attorneys fees in case of litigation. These instruments were dated April 30, 1908, the note being due May 1, 1909. Appellant's wife owned valuable property, as mentioned in the contract, estimated to be worth something like nine thousand dollars, the value of the house being estimated at about six thousand dollars. Some of the purchase price of the property was unpaid at the time, a vendor's lien being reserved upon the property in favor of the original seller. At the same time, or about the time of the execution of the above instrument, appellant and his wife also gave Mrs. Pillsbury a lien on property in the city of Dallas shown to be worth six thousand dollars. It is also shown that there was an encumbrance on the Dallas property amounting to three thousand dollars. All this property is shown to have belonged to the wife of appellant, and that situated in San Antonio was used and occupied as a homestead. Immediately upon securing this money appellant began improving the San Antonio property, and testifies that he expended more than the $1,500 in improving the same, and that when finished the house was supposed to be worth something like twelve thousand dollars in addition to the value of the lots upon which the house was situate. At the time he began the improvements the house was not completed, and in finishing up the house had been enlarged from ten or twelve rooms to one containing twenty-two rooms. The idea of appellant seemed to have been by improving this property, it being near the business part of the town, that it could be made a paying investment by renting the rooms such as the family would not need. Appellant deposited the money and checked it out. There is some evidence showing that in order to prevent garnishment for some other debt he deposited the money in his name as trustee, with instructions to the bank to pay the money out on his check whether signed as trustee or not. Mrs. Pillsbury remained with the family a short while, when some disagreement and trouble arose between herself and the wife of appellant. She left the place, and ceased to live with the family of appellant. Mrs. Manix brought suit against appellant to foreclose the vendor's lien upon the property. Mrs. Pillsbury also brought suit on her note and contract,

and intervened in the Manix litigation. Judgment was finally rendered against appellant and his wife foreclosing the vendor's lien for the sum of $3,433.60 on the notes and accrued interest, with $343.36 attorneys' fees, amounting in the aggregate to $3,776.96. Judgment was also rendered in favor of Mrs. Pillsbury for $1,654.50, being the note for $1,500 and accrued interest. The sum total of these judgments was $5,431.46. The property was sold and brought about four thousand dollars. After the property was thus sold, it was subsequently sold for $12,500. What became of the excess above Mrs. Manix' judgment as deducted from the four thousand dollars is not made to appear. The lien was also foreclosed in favor of Mrs. Pillsbury on the Dallas property, and she seems not to have received any benefit from the sale of the Dallas property. It is not made to appear that appellant received any benefit of these sales. In fact, it may be stated that he did not, nor did his wife, further than as stated.

As we gather from the record, the State's theory was—and they undertook to sustain their theory by circumstances—that all of the $1,500 was not expended in improvements of the premises mentioned. Appellant's testimony is to the effect that he not only expended the $1,500 on the improvements of said property, but that he spent more than $1,500 on the house, and that the house was put in good condition when completed. It is apparent, we think, by reason of the litigation and sale, that the property of appellant and his wife passed from them for a nominal sum, and Mrs. Pillsbury failed to collect her money. In other words, it seems to have been a very unfortunate transaction, financially speaking, to Mrs. Pillsbury as well as to appellant and his wife. He further testified that, on account of these matters, that another transaction was broken into by which he lost, as he thought, about twenty thousand dollars, on a proposed land sale at Aransas Pass. The State's further contention seems to be that if all the $1,500 was not expended in improvements on the house, that this would constitute embezzlement on the part of appellant. In other words, if he used any of the $1,500 for any other purpose than improving the house, that he would be guilty of embezzling the money as the agent of Mrs. Pillsbury. In this connection, it may be well enough to make this further statement, that Mrs. Pillsbury employed appellant and his partner, Adams, as attorneys, to set aside a judgment rendered in her favor and in favor of her minor daughter, at El Paso, and for this she paid them the sum of $500. A suit was filed to set aside said judgment. That judgment was based upon a damage suit against a railroad company for the death of her husband. She conceived the idea that her attorneys at El Paso had in some way failed to secure the amount of money that she thought she and her child were entitled to, especially the amount that the child should have received on account of the death of the child's father. It was after this employment some time that appellant borrowed the $1,500 mentioned. This was the only

employment, as shown by the record, as lawyers by Mrs. Pillsbury, of appellant, or of appellant and Adams.

There are several very interesting questions suggested for revision, which we deem unnecessary to decide, but several of them would require a reversal of the judgment.

It is urged that the evidence is not sufficient to show a case of embezzlement. From the statement already made of the case it will be seen that this contention is well taken. Appellant's relation to Mrs. Pillsbury in the financial transaction was not that of a trustee or agent. He was simply a borrower and she a lender of that amount of money. The facts are uncontroverted that she loaned the money to appellant and his wife and took their obligation. The note was signed by appellant and his wife, and the instrument in writing was acknowledged as required by law by both appellant and his wife. Upon default she brought suit upon the note, and not only foreclosed upon the property mentioned in the contract situated in San Antonio, but also upon the property in Dallas. A lien was also given to secure the payment of the note. Mrs. Pillsbury did not place this money in appellant's hands as her money. It was loaned him for the purpose of improving his property, with the ulterior purpose of affording a more certain security for the return of her money. This is evidenced by all the facts; even her own testimony shows this to be true. The note, the mortgage or liens, the foreclosure of the suit, and all the facts show that it was just an ordinary contract of borrowing and lending. This would have been true, as we understand the law, even if there had been a fraudulent intent, which is not intimated by this opinion, on the part of appellant not to repay the money. The rule seems to be that even where a party obtains money by a loan, though he may have had the fraudulent intent not to repay, that such transaction would not constitute embezzlement. That it might constitute obtaining money under false pretenses would not interfere with the above proposition. That Mrs. Pillsbury did not trust appellant to return the money, and did not place it in his hands as her agent, thus creating the fiduciary relation of agent and principal, is evidenced by all the facts stated in this opinion. Under no phase of our law as has been called to our attention can the facts in this case constitute the offense of embezzlement. We are of opinion that this is a correct view of this case, therefore the other questions suggested for revision are not discussed, but the judgment is reversed and the cause remanded for want of evidence to sustain the conviction.

*Reversed and remanded.*