BEN E. NEW v. THE STATE.

No. 16647.   Delivered May 2, 1934.
State's Rehearing Denied October 3, 1934.
Reported in 74 S. W. (2d) 697.

The opinion states the case.

*J. E. Newberry, Everette B. Parks,* and *Baskett & DeLee,* all of Dallas, for appellant.

*Sam B. Spence,* Dist. Atty., of Wichita Falls, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement; the punishment, confinement in the penitentiary for ten years.

Jes Rasmussen had $4,200 on deposit in the First State Bank at Dundee. The bank was closed and in process of liquidation. However, practically enough money was on hand to pay all of the depositors. Mr. Rasmussen and Mr. Lyles, who were the largest depositors, had agreed to defer the full collection of their claims in order that the bank might pay the remainder of the depositors. The full amount due Mr. Rasmussen would have eventually been paid. After the bank had been closed appellant went to Mr. Rasmussen with the request that he buy some Postal Bonds. Mr. Rasmussen advised him that his money was in the bank and that it could not at that time be obtained. Finally he delivered to appellant an assignment of his deposit of $4,200 in the closed bank. He testified: "I gave this assignment to Mr. New (appellant) in order to buy $4,200 worth of Postal Bonds after he had explained to me that these bonds were backed by the Government and were the safest thing in the world. * * * I never got the bonds from Mr. New. This transaction was made about April 26, 1933. He wrote me a letter and stated he received the money and was going to send the bonds." On cross-examination Mr. Rasmussen testified that he assigned the deposit to appellant in order that he might buy the bonds for him; that appellant did not have the bonds with him at the time, but stated to him that he would buy them and send them to him; that appellant said he would like to get the money immediately as he needed some two or three hundred dollars to close a trade in Wichita Falls

which would pay him a commission; that appellant did not tell him that he was going to sell the assignment. We quote further from the testimony of the witness on cross-examination: "At the time I made the trade with Mr. New it was with the understanding that he was going to give me bonds in exchange, as I was giving up all claim to the debt the bank owed me. Just wiping out what the bank owed me as far as I was concerned and parting with my title in the matter. * * * I was not looking to my bank account any more because I traded that off for the bonds." After securing the assignment from Mr. Rasmussen appellant transferred it to Alex. A. Allbright for ten thousand dollars worth of building and loan stock. Mr. Allbright secured $1,300 from the account Mr. Rasmussen had after the assignment was transferred to him and apparently continued to participate in the dividends that were paid on said account. Appellant took the building and loan bonds to Wichita Falls and sold them for approximately $3,000. Mr. Rasmussen received nothing from his assignment, as appellant at no time purchased any Postal Bonds for him; but, on the contrary, according to the version of the State, appropriated the money he had received.

Appellant did not testify in his own behalf, and introduced no witnesses.

The indictment charged the embezzlement of $4,200 in money. It is clear from the record that no money belonging to Jes Rasmussen came into appellant's possession by virtue of his agency. Appellant received from Mr. Rasmussen the assignment which he traded for building and loan stock. This stock was thereafter taken to Wichita Falls and sold. From the State's standpoint, appellant embezzled the assignment and not the money. An allegation of embezzlement or misapplication of money is not supported by proof of the embezzlement or misapplication of an assignment. Miller v. State, 53 S. W. (2d) 790; Meyers v. State, 8 S. W. (2d) 125.

We think the testimony of Mr. Rasmussen raised an issue as to whether appellant was Mr. Rasmussen's agent. If Mr. Rasmussen did not place the assignment in the hands of appellant as his agent the fiduciary relation of principal and agent was not created. Clark v. State, 135 S. W., 575. Appellant's exception to the charge for its failure to submit affirmatively this issue should have been responded to.

In view of the fact that another indictment must be returned if appellant is to be tried again, we desire to say that the facts apparently bring the case within the purview of art.

1413, P. C., relating to theft. Two counts could properly have been embraced in the indictment. As presented, we have some doubt as to the facts bringing the transaction within the purview of the statute denouncing embezzlement.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING

LATTIMORE, JUDGE.—Responding to the motion for rehearing filed by the State, we have again carefully reviewed the record to see if there be facts to support the conclusion that appellant acquired from Rasmussen (hereinafter referred to as R) any money,—as is charged in the indictment. We find in the record a resolution, agreed to by all the directors of the Dundee bank, and signed also by R, of date March 25, 1933, agreeing and directing that all the money then on hand in said bank should be paid out to depositors, paying in full all such depositors save two, one of whom was R, the amount of whose deposit, after receiving $1800 from the bank on the date of said resolution, was $4200, which by the terms of said agreement was to be paid out of collection to be made from assets and debts due to the bank, payments of such amount to be made to R each sixty days thereafter.

The assignment made to this appellant by R, embezzlement of which seems to form the basis of this offense, was dated April 26, 1933. Said assignment specified on its face that R sold appellant the deposit standing in the name of R on the books of said bank. Regarding same R swore as a witness as follows: "There wasn't any money in it because we could not get our money; we had to wait until payments came in before we would be able to get our money. * * * I told him I didn't believe he could get the money out of the bank because they did not have any."

Again, in another place R testified as follows: "At the time I made the trade with Mr. New, it was with the understanding that he was going to give me bonds in exchange, as I was giving up all claims to the debt the bank owed me."

The record further shows that on May 27, 1933, by written endorsement on the back of the assignment made to him by R, appellant sold to Allbright whatever claim he had to the

$4200 deposit referred to in the face of said assignment. Allbright testified for the State as follows: "At the time I obtained this instrument from Mr. New, on the 27th day of May, I knew at that time there was no money in the bank, but I knew it would have to come in. It would have to come in later on the subscriptions that had been made by the person interested in the bank."

It thus appears that, more than a month after appellant acquired his assignment from R, no money had come into the bank to the credit of R's claim by reason of being a depositor. The fact that later money did come in,—which was collected by Allbright,—in no way establishes the fact that money belonging to R was in the bank when R made said assignment to appellant more than a month before appellant transferred same to Allbright. True, Mr. Flatt, who was designated in the resolution first referred to as the person authorized to collect the assets and debts of the bank, testified that on May 29, 1933, he paid to Mr. Albright $1384.20 on the strength of the assignment which had been transferred to Allbright by appellant, —but this is not enough to support any legal conclusion that there was any money in the bank belonging to R on April 26, 1933, when he made said assignment to appellant.

The State also urges that the case of Landrum v. State, 73 Texas Crim. Rep., 580, lays down a doctrine differing from that announced in our opinion herein. We do not think so. It there appears that Mrs. Dunn turned over to Landrum certain stocks and gave him her note,—same to be used in procuring for her other named stocks. Landrum sold the stocks turned over to him by Mrs. Dunn and appropriated the proceeds. He was charged with embezzling said proceeds. This court affirmed his conviction, holding that the court's charge put before the jury squarely the question as to whether Landrum conceived the intent to appropriate before or after he sold the stocks of Mrs. Dunn,—if the former to acquit;—if the latter to convict,—and that the action of the jury in convicting showed that in their opinion the testimony established that appellant's intent was to appropriate the proceeds. In the case before us R testified as follows: "He did not tell me he was going to sell the assignment of the money I gave him. I do not know whether the assignment of the money I gave was sold or not * * *. At the time I made the trade with Mr. New, it was the understanding that he was going to give me bonds in exchange." So also in the instant case the court charged the jury that if they believed that appellant, at R's direction, took

possession of the bank account of R in the Dundee bank and sold same, and that the value of the money he received from the sale of said bank account was fifty dollars or more, "And that the defendant did then and there without the consent of said R embezzle, etc., said money, if any, the jury should find him guilty," etc. We find no testimony in the record showing that appellant sold R's bank account for any money, but the testimony shows the contrary, and establishes that he exchanged the assignment for building and loan stocks. We see no similarity in the case before us and the one referred to. Nor can we agree that our holding in our original opinion is at variance with what we said in Mannen v. State, 109 Texas Crim. Rep., 74, 3 S. W. (2d) 443. There the conviction was for embezzlement of stocks which were delivered to the accused or his confederate for the purpose of sale and which were in fact sold. We held the facts in that case sufficient to evidence the embezzlement of the stocks.

Being unable to agree with the State's contention, the motion for rehearing is overruled.

*Overruled.*