## W. G. FORSON V. STATE

No. 27,623. October 5, 1955

*George B. Savage* and *Darrell Shelton*, Brownwood, for appellant.

*Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

Our state's attorney has confessed error in this case. His brief is adopted as the opinion of the Court.

"Appellant was convicted under the second count of an indictment which charged him with theft by bailee of $196.72 in

money from M. H. Dodge and assessed punishment at confinement in the penitentiary for a term of two years.

"The indictment, in charging the offense, alleged in part as follows:

" '. . . W. G. Forson, having possession of $196.72 in money, of the value of $196.72, then and there the property of M. H. Dodge by virtue of his contract of bailment, to-wit, the said M. H. Dodge having advanced said sum of $196.72 in money to the said W. G. Forson for the purpose of purchasing supplies and equipment to be used in the business of F & R Drilling Company, with the said M. H. Dodge, did then and there unlawfully and without the consent of the said M. H. Dodge, the owner thereof, fraudulently convert said money to his, the said W. G. Forson's own use and with intent to deprive the said M. H. Dodge, the owner thereof, of the value of same . . . .'

"The record reflects that appellant was the president, treasurer and active manager of the F. & R. Drilling Company, which he had organized, and that the injured party, M. H. Dodge, was a stock holder in the company and its business manager and the two were associated in the operation of the company's business in Brown County.

"The prosecution grows out of a transaction in which Dodge executed and delivered to the appellant a check in the sum of $575.00.

"Dodge testified that he gave the check on an occasion when the company needed a drill line and did not have the funds with which to purchase it; that on such occasion appellant told him that the line would cost $575.00 and Dodge loaned him the money to purchase the line and for no other purpose; that at the time the check was delivered to him appellant told Dodge that he had $3,000.00 coming from an oil company and that when it was received he would repay the $575.00; that appellant later received a check for $691.15 from the oil company but did not repay Dodge the amount he owed; that appellant had not paid him the $575.00 but that he thereafter received a note from the drilling company in the amount of $1,230.00 to cover the $575.00 which he had loaned appellant and other money which he had advanced the company to pay for wages and equipment.

"The State's evidence showed that appellant took the $575.00 check to the Oil Belt Tool Company at Coleman, Texas, and

purchased a drill line; that he ordered a 1500-foot line which cost $495.00 and other supplies in the amount of $30.00, making a total of $525.00; that at such time appellant endorsed and delivered to the Tool Company the $575.00 check in payment of the drill line and supplies, and at his request received from the owner of the Tool Company fifty dollars in cash; that before he left the Tool Company house in Coleman it was discovered that the Tool Company did not have a 1500-foot line in stock; that appellant then took a 1000-foot line, and some days later received from the Tool Company a check in the amount of $146.72 as an adjustment for the difference between the amount of merchandise actually purchased and the $575.00 check which he had delivered to the company.

"Appellant testified that the $575.00 check was made as a direct personal loan to him by the injured party, M. H. Dodge; that he took the check to the Oil Belt Tool Company to purchase a 1500--foot line; that after he left the check at the office it was discovered that the company did not have the 1500-foot line in stock; that he then took a 1000-foot line and purchased some other supplies. Appellant denied receiving the fifty dollars in cash from the owner of the Tool Company, but admitted receiving a check from the company in the amount of $146.52.

"Appellant challenges the sufficiency of the evidence, since the transaction shows the money was a loan to him by Dodge and was, therefore, not held by him under contract of bailment.

"Storey on Bailment, 9th ed., p. 2, defines a bailment as follows:

" 'A delivery of goods on condition, express or implied, that they shall be restored by the bailee to bailor, or according to his directions as soon as the purpose for which they are bailed shall be answered,'

and is defined in Corpus Juris, Vol. 6, p. 1084:

" 'A bailment may be defined as a delivery of personalty for some particular purpose or on mere deposit upon a contract, expressed or implied, that, after the purpose has been fulfilled it shall be re-delivered to the person who delivered it or otherwise dealt with it according to his directions or kept until he reclaims it as the case may be.'

"In Northcutt v. State, 60 Texas Cr. R. 259, 131 S.W. 1128, we find this definition:

" 'A bailment is a delivery of goods for some purpose on a contract, expressed or implied, that after the purpose has been fulfilled, they should be redelivered to the bailor, or afterwards dealt with according to his directions, or kept until he reclaims them,'

and the case holds that for a bailment the title must remain in the bailor. Dunlap v. State, 143 Texas Cr. R. 601, 160 S.W. 2d 529.

"The testimony of the prosecuting witness, Dodge, concerning the nature of the transaction, is as follows:

" 'Q. Well, now, what do you mean, Mr. Dodge, was it a loan you made Mr. Forson or not a loan but just a cash advancement? . . .

" 'A. Absolutely a loan, yes, sir.

" 'Q. Was it a personal loan to Mr. Forson or was it a loan to F. & R. Drilling Company?

" 'A. I was looking to him; the company had no money but he said the company would pay me and give me a thousand shares of stock bonus.

" 'Q. Was there anything said between you to the effect that he was to return any of that loan that was not used by him in buying the drill line in the event it did not take it all?

" 'A. Not a word.'

"This testimony does not show that the money or the drill line, to be purchased, was to be delivered to the prosecuting witness, Dodge, at the completion of the contract, and therefore no bailment is shown; and this case is distinguished from Rick v. State, 151 Texas Cr. 426, 207 S.W. 2d 629, wherein accused was given a check to purchase an automobile for the injured party, and the court held a bailment was created. There the defendant violated the trust by appropriating the money to his own use and benefit and was guilty of theft by bailee. It can be seen that either the money or the car was to be delivered to the bailor in that case. Here Dodge was to be paid out of money due appellant from another oil company and not out of the money or property purchased with the check that he gave appellant.

"This testimony sets out a relationship of debtor and creditor and, though the facts be different, is in point with Clark v. State, 61 Texas Cr. Rep. 539, 135 S.W. 575, where a conviction

for embezzlement was had where money had been advanced to the appellant therein in the sum of $1,500.00 to make improvements on his homestead, and the complaining witness took a note from appellant and his wife, together with the contract reciting that the money should be used in the construction of a house, and a mechanic's and materialman's lien to secure the payment of the note, and such was an advance or loan for a specific purpose, and the money, as found by the jury, was not used for that purpose. Had it been so used, the value of the security for the complaining witness would have been increased; and the court said, ' . . . . Appellant's relation to Mrs. Pillsbury in the financial transaction was not that of trustee or agent. He was simply a borrower and she the lender of that amount of money . . . . Mrs. Pillsbury did not place this money in appellant's hands as her money. It was loaned for the purpose of improving his property with the ulterior purpose of affording a more certain security for the return of her money.'

"Here, as in the Clark case, the value of the security or stock of the complaining witness, Dodge, would have been increased if all of the money had been used for drill line.

"Since the testimony shows the relationship of debtor and creditor, and not that of bailment, the evidence is insufficient to support the conviction."

The judgment is reversed and the cause remanded.